FILED

TROUTMAN SANDERS LLP
Jennifer Trusso Salinas, Bar No. 198579
jennifer.salinas@troutmansanders.com
Jenny Kim, SBN 282562
jenny.kim@troutmansanders.com
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone:  949.622.2700
Facsimile:  949.622.2739

2016 SEP 30  PM 4: 00

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____

WEST, WEBB, ALLBRITTON & GENTRY
Gaines West (*pro hac vice* pending)
gaines.west@westwebblaw.com
Amy C. Klam (*pro hac vice* pending)
amy.klam@westwebblaw.com
1515 Emerald Plaza
College Station, TX 77845
Telephone:  979.694.7000
Facsimile:  979.694.8000

Attorneys for Plaintiff
[UNDER SEAL]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SACV16-01824 CAS (GJSx)

| | |
|---|---|
| UNITED STATES OF AMERICA ex. rel. [UNDER SEAL], | Case No. |
| Relator, | **COMPLAINT** |
| v. | **FILED IN CAMERA AND UNDER SEAL** |
| [UNDER SEAL], | **Pursuant to** |
| Defendants. | **31 U.S.C. § 3730(b)(2)** |

## DOCUMENT TO BE KEPT UNDER SEAL

## DO NOT ENTER ON PACER

29300321v1

COMPLAINT

1    TROUTMAN SANDERS LLP
     Jennifer Trusso Salinas, Bar No. 198579
2    jennifer.salinas@troutmansanders.com
     Jenny Kim, Bar No. 282562
3    jenny.kim@troutmansanders.com
     5 Park Plaza, Suite 1400
4    Irvine, CA  92614-2545
     Telephone:  949.622.2700
5    Facsimile:  949.622.2739

6    WEST, WEBB, ALLBRITTON & GENTRY
     Gaines West (*pro hac vice* pending)
7    gaines.west@westwebblaw.com
     Amy C. Klam (*pro hac vice* pending)
8    amy.klam@westwebblaw.com
     1515 Emerald Plaza
9    College Station, TX 77845
     Telephone:  979.694.7000
10   Facsimile:  979.694.8000

11   Attorneys for Plaintiff
     HOWARD BECK, M.D.
12

13                UNITED STATES DISTRICT COURT

14                CENTRAL DISTRICT OF CALIFORNIA

15

16   UNITED STATES OF AMERICA ex.      Case No.
     rel. HOWARD BECK, M.D.,
17                                     **COMPLAINT**
               Relator,
18                                     **FILED IN CAMERA AND UNDER
     v.                                SEAL**
19                                     Pursuant to
     ST. JOSEPH HEALTH SYSTEM,         **31 U.S.C. § 3730(b)(2)**
20   COVENANT HEALTH SYSTEM,
     COVENANT MEDICAL CENTER,
21   COVENANT MEDICAL GROUP,

22             Defendants.

23

24

25

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## COMPLAINT

Relator Howard Beck, M.D., by and through the undersigned counsel, brings this Qui Tam Complaint on behalf of the United States of America, against Defendants St. Joseph Health System, Covenant Health System ("CHS"), Covenant Medical Center ("CMC"), and Covenant Medical Group ("CMG"). This action is brought by Relator to recover civil penalties and treble damages under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b), and the Stark Statute, 42 U.S.C. § 1395nn. Relator further seeks relief for violations of state law under California Business and Professions Code § 17200 *et seq.*, Texas Human Resources Code § 32.039, and Texas Human Resources Code § 36.001 *et seq.*

## INTRODUCTION

1.     This is an action to recover treble damages and civil penalties, on behalf of the United States of America (the "United States" or the "Government"), arising from false and/or fraudulent statements, records and claims made and caused to be made by the Defendants and/or their agents and employees in violation of the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended ("the FCA"), the California Unfair Competition Act, Bus. & Prof. Code § 17200 *et seq.*, the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code § 36.001 *et seq.*, and Texas's anti-kickback law, Tex. Hum. Res. Code § 32.039.

2.     This *qui tam* case is brought against Defendants for knowingly defrauding the federal Government and the state of Texas by submitting and/or causing the submission of false claims for reimbursement to Medicare, 42 U.S.C. § 1395 *et seq.*, and Medicaid, 42 U.S.C § 1396 *et seq.*, in violation of the anti-kickback statute ("AKS"), the Stark statute, the FCA, and California and Texas state laws. As alleged below, for at least the past six years, Defendants have engaged in a scheme to pay improper compensation to CMG physicians to induce

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   them to refer patients, including Medicare and Medicaid patients, to CMC for
2   inpatient and ancillary services.

3       3.      The compensation offered to physicians as an inducement for referrals
4   includes overall compensation above fair market value, as evidenced by
5   Defendants' substantial and consistent losses on their medical group CMG.
6   Defendants tolerate such losses only because Defendants are able to recover such
7   losses, plus substantial additional sums, by ensuring the same physicians refer their
8   patients to CMC for inpatient and ancillary services.  Compensation to these
9   referring physicians came in many forms including annual salaries well above fair
10  market value, transcription services, IT services, insurance and questionable real
11  estate transactions.  The financial relationships between the Defendants and the
12  CMG physicians trigger the application of the stark Statute, the AKS, and various
13  state laws.

14      4.      The CMG physicians have entered into illegal financial relationships
15  with Defendants that include unlawful kickbacks.  The CMG physicians refer large
16  volumes of patients, including Medicare and Medicaid patients, to CMC in
17  violation of federal and state law.  Defendants have, and continue to submit, false or
18  fraudulent claims based on these referrals to the United States to obtain millions of
19  dollars in Medicare and Medicaid reimbursement that they are not legally entitled
20  to obtain.  Under the FCA, such claims are false and/or fraudulent because the
21  Defendants are not entitled to payment for such unlawfully obtained referrals.

22      5.      Further, despite knowing that millions of dollars in payments from
23  federal and state governments have been received in violation of the Stark statute's
24  prohibition on receipt of payment for services rendered pursuant to an improper
25  financial arrangement, Defendants have failed to refund these payments as required
26  by the statute.  Under the FCA, this constitutes a knowing and improper avoidance
27  of an obligation to transmit money to the Government.

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    **JURISDICTION AND VENUE**

2    6.    This action arises under the False Claims Act, as amended, 31 U.S.C.

3    §§ 3729-33.  This Court has subject matter jurisdiction over this action pursuant to

4    28 U.S.C. § 1331, and subject matter jurisdiction under the Federal False Claims

5    Act, 31 U.S.C. § 3732.  The Court has supplemental subject matter jurisdiction over

6    the state law claims pursuant to 28 U.S.C. § 1367(a), as the state law claims arise

7    from the same facts as the federal claims, such that they form part of the same case

8    or controversy.

9    7.    This court has personal jurisdiction over Defendants pursuant to 31

10   U.S.C. § 3732(a) because that section authorizes nationwide service of process,

11   because Defendants are related corporate entities and co-conspirators that have

12   engaged in concerted misconduct as alleged herein, and because all Defendants

13   have minimum contacts with the United States.  Moreover, one or more Defendants

14   can be found in and transact substantial business in the Central District of

15   California, including business related to Defendants' concerted misconduct.

16   8.    Venue lies in this District under 28 U.S.C. § 1391(b)(2), 1391(c),

17   1395(a) and 31 U.S.C. § 3732(a) because this is an action under § 3730 for

18   violations of § 3729, Defendant St. Joseph Health System may be found, resides

19   and transacts substantial business in this district and all other Defendants are related

20   St. Joseph entities and co-conspirators that have engaged in concerted misconduct

21   as alleged herein.  Venue is also proper in this District because one or more

22   Defendants can be found in and transacts substantial business in this District,

23   including business related to Defendants' concerted misconduct.

24

25   **THE PARTIES**

26   9.    Relator Howard Beck, M.D., is a citizen and resident of the State of

27   Texas.  Relator has practiced medicine in Lubbock, Texas since 1991.  Relator has

28   been a staff member/held privileges at Defendant CMC since Defendant CHS was

- 4 -                    COMPLAINT

1   formed in 1998 through a merger of Methodist Hospital and Saint Mary of the
2   Plains Hospital (which was owned by St. Joseph Health System).  Dr. Beck was the
3   Chief of Staff at St. Mary's at the time of the merger.  Dr. Beck was on the
4   committee to establish Medical Staff Bylaws for the new Covenant hospital.  In
5   addition to his privileges at CMC, Dr. Beck is on the medical staff of three other
6   hospitals in the geographic area.  Dr. Beck is also employed to provide on call
7   coverage for CMC but is compensated by its ultimate parent company St. Joseph's
8   for those services.  He is also a participating provider in Medicare and Medicaid.

9       10.    Defendant St. Joseph Health System is a non-profit health care system
10  that includes CHS, and its associated hospitals including CMC.  St. Joseph's
11  corporate office and principal place of business is located at 3345 Michelson Drive,
12  Suite 100, Irvine, California 92612.  St. Joseph is the sole or corporate member of
13  14 acute care hospital affiliates located throughout the country, largely in the
14  southwestern United States.  St. Joseph does business under a multitude of names
15  across several states.  St. Joseph and Lubbock Methodist Hospital System are the
16  corporate members of Defendant CHS.

17      11.    Defendant CHS is a non-profit entity owned and controlled by its
18  parent company, St. Joseph.  CHS's corporate office and principal place of business
19  is located 2107 Oxford Avenue, Suite 112, Lubbock, Texas 79410.  CHS's Chief
20  Executive Officer is paid by its parent, St. Joseph.  The reserved rights in CHS's
21  tiered governance structure contemplate approval by its ultimate parent, St. Joseph,
22  for financing, budgets, unbudgeted expenditures of defined amounts, strategic plan,
23  appointment of auditors, creation or investment in a legally recognized entity, joint
24  venture purposes, sales or disposition of real property, merger or sale of
25  substantially all assets, appointment and removal of trustees, and adoption or
26  amendment of articles or bylaws.

27      12.    Defendant CMC is CHS's Covenant Health System's flagship hospital,
28  located at 3615 19th Street, Lubbock, Texas 79410.  CMC is wholly owned by

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    CHS and, therefore, is indirectly owned by St. Joseph. In fact, Dr. Beck is
2    informed and believes that physician services at CMC are compensated by its
3    ultimate parent, St. Joseph.

4        13.    CMG is a non-profit, tax-exempt medical foundation which is certified
5    by Texas law to employ physicians and practice medicine. CMG is owned by CHS
6    and, therefore, indirectly owned by St. Joseph. CMG advertises itself as the largest
7    physician group in the Lubbock area, employing over 250 physicians in various
8    specialties. CMG's principal place of business is 3420 22nd Place, Lubbock, Texas
9    79410.

10       14.    CMG is controlled by CHS and its ultimate parent, St. Joseph. More
11   specifically, the Principal Officer of CMG Steve McCamy is compensated by CHS.
12   CMG's Chief Executive Officer is also compensated by CHS. CMG has no
13   independent board members because all board members are required to be active
14   physicians with loyalties to its parent CHS. CHS is the sole corporate member of
15   CMG. Similar to CHS, CMG has a tiered governance in which the corporate
16   members reserve the right to appoint trustees to the CMG Board. All trustee
17   appointments that come from the CMG as nominations must be approved by CHS,
18   as the corporate member, and its ultimate parent, St. Joseph. The reserved rights in
19   the CMG's tiered governance structure contemplate approval by the CHS Member
20   of financing, budgets, unbudgeted expenditures of defined amounts, strategic plan,
21   appointment of auditors, creation or investment in a legally recognized entity, joint
22   venture purposes, sale or disposition of real property, merger or sale of substantially
23   all assets, appointment and removal of trustees, and adoption or amendment of
24   articles or bylaws.

25       15.    Pursuant to 31 U.S.C. § 3730(b)(2), a copy of this complaint and
26   written disclosure of substantially all material evidence and information Dr. Beck
27   possesses has been or is being served on the Government in accordance with Fed.
28   R. Civ. P. 4(i). As required by 31 U.S.C. § 3730, Dr. Beck made a disclosure

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

COMPLAINT

1  statement of material evidence and information in his possession to the Government

2  and the United States Attorney General for the Central District of California

3  demonstrating the actions that serve as the basis for this action. This action is not

4  based on any public disclosure of information within the meaning of 31 U.S.C. §

5  3730(e)(4)(A). Dr. Beck has direct and independent knowledge, within the

6  meaning of 31 U.S.C. § 3730(e)(4)(B), of the information on which the allegations

7  in this complaint are based. To the extent any of these allegations may have been

8  publicly disclosed within the meaning of 31 U.S.C. § 3730, Dr. Beck voluntarily

9  provided this information to the Government before any such disclosure.

## STATUTORY AND REGULATORY FRAMEWORK

### The Federal False Claims Act

13  16.    The False Claims Act provides that any person who knowingly

14  presents, or causes to be presented, a false or fraudulent claim for payment or

15  approval, or who knowingly makes, uses or causes to be made or used, a false

16  record or statement material to a false or fraudulent claim to the United States is

17  liable for damages in the amount of three (3) times the amount of loss the

18  government sustained, and penalties which range between $5,500 and $11,000 per

19  claim. 31 U.S.C. § 3729(a); 28 C.F.R. § 85.3. For purposes of the FCA, "the terms

20  'knowing' and 'knowingly' mean that a person . . . (1) has actual knowledge of the

21  information; (2) acts in deliberate ignorance of the truth or falsity of the

22  information; or (3) acts in reckless disregard of the truth or falsity of the

23  information."    31 U.S.C. § 3729(b). Proof of specific intent to defraud is not

24  required under the FCA. *Id.*

### Federal Healthcare Programs- Medicare

26  17.    Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*,

27  establishes the Health Insurance for the Aged and Disabled program, known as

28  Medicare. Medicare is a federally operated and funded program administered by

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   the Secretary of Health and Human Services ("HHS") through the Centers for

2   Medicare and Medicaid Services ("CMS"), a department of HHS.

3      18.     Under the Medicare program, CMS makes payments retrospectively

4   (after services are rendered) to hospitals, physicians, and other providers for

5   inpatient and outpatient services.  Medicare enters into provider agreements to

6   establish the provider's eligibility to participate in the Medicare program.  Medicare

7   Part A authorizes payment for institutional care, including hospitals.  Part B covers

8   payments for physician and laboratory services.  42 U.S.C. §§ 1395c-1395i-4; §

9   1395k.

10      19.     Providers who participate in Medicare Part A or Part B must

11   periodically sign an application for participation, Form 855A for inpatient care and

12   Form 855B for outpatient care, and submit it to the United States.  Form 855A

13   contains a "Certification Statement" that provides, *inter alia*:

14      I agree to abide by the Medicare laws, regulations and program

15      instructions that apply to this provider. . . I understand that payment of

16      a claim by Medicare is conditioned upon the claim and the underlying

17      transaction complying with such laws, regulations, and program

18      instructions (including, but not limited to, the Federal anti-kickback

19      statute and the Stark law), and on the provider's compliance with all

20      applicable conditions of participation in Medicare. . .

21

22      I will not knowingly present or cause to be presented a false or fraudulent

23      claim for payment by Medicare, and I will not submit claims with deliberate

24      ignorance or reckless disregard of their truth or falsity.

25

26   CMC participates in the Medicare program.  At all relevant times, CMC's Chief

27   Financial Officer signed the Form 855A application for CMC, and caused it to be

28   submitted to the United States.  Form 855 B contains a similar certification.  At all

TROUTMAN SANDERS LLP
3 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  relevant times, CMG's Chief Financial Officer signed the Form 855B application
2  for services rendered by CMG physicians, and caused it to be submitted to the
3  United States.

4      20.    As a prerequisite to payment pursuant to Medicare Part A, CMS
5  requires hospitals to submit annually form CMS-2552, known as the hospital cost
6  report. Cost reports are the final claim that a provider submits for items and
7  services rendered to Medicare beneficiaries.

8      21.    At the end of each provider's fiscal year, the provider files its cost
9  report, stating the amount of Part A reimbursement the provider believes it is due
10 for the year. *See* 42 U.S.C. § 1359g(a); 42 C.F.R. § 413.20. Medicare relies on the
11 provider's cost report to determine whether the provider is entitled to additional
12 reimbursement than it has already received through interim payments, or has been
13 overpaid and must reimburse Medicare. 42 C.F.R. §§405.1803, 413.60 and
14 413.64(f)(1).

15     22.    At all relevant times, CMC was required to and did submit annually a
16 hospital cost report. The cost report contains another "Certification" that must be
17 signed by the chief administrator of the provider, or a responsible designee. This
18 certification includes a statement that the services identified in the cost report were
19 provided in compliance with federal laws and regulations. At all relevant times,
20 CMC submitted a signed hospital cost report, certifying that the services it had
21 provided that year were provided in compliance with federal laws and regulations,
22 including those identified in this lawsuit.

23 **Federal Healthcare Programs- Medicaid**

24     23.    Medicaid is a joint federal-state program that provides health care
25 benefits for certain groups—primarily the poor and disabled. Each state
26 administers its own Medicaid program, under federal regulations that generally
27 govern what services should be provided, under what conditions. CMS monitors
28 the state-run programs and establishes requirements for service delivery, quality,

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  funding and eligibility standards.  The federal government provides a portion of
2  each state's Medicaid funding.

3       24.    To submit claims to and receive reimbursement under Medicaid,
4  providers must apply to and enroll in their state's Medicaid program, agree to a
5  provider agreement, and submit periodic reports and recertification documents, all
6  of which contain attestations to the providers' compliance with federal laws.

7  **The Anti-Kickback Statute**

8       25.    The federal Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b,
9  prohibits the payment, in any form, whether direct or indirect, made in part or in
10  whole to induce or reward the referral or generation of federal health care business.
11  The AKS prohibits the offer or payment of "any remuneration" in return for
12  referrals.  42 U.S.C. § 1320a-7b (b).  The AKS extends equally to the solicitation or
13  acceptance of payments and to offers to pay for referrals.  The AKS was enacted
14  because of Congressional concerns that payments made in return for referrals would
15  lead to overutilization, affect medical judgment, and restrict competition.

16       26.    In addition to prohibiting payments designed to induce referrals, the
17  AKS prohibits the entity receiving a prohibited referral from presenting or causing
18  to be presented to Medicare any claim for referrals that are induced by kickbacks.
19  In 2010, the AKS was amended to provide that a claim that includes items or
20  services resulting from kickback violations are deemed "false" under the FCA.  42
21  U.S.C. § 1320a-7b(g).

22  **The Stark Statute**

23       27.    The Stark statute, 42 U.S.C. § 1395nn prohibits a hospital (or other
24  entity) from submitting Medicare claims for designated health services based on
25  referrals from physicians who have a "financial relationship" with the hospital, and
26  prohibits Medicare from paying for such claims.  "Financial relationship" includes
27  a "compensation arrangement" which means any arrangement involving any

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

COMPLAINT

1   remuneration paid directly or indirectly to a referring physician.  42 U.S.C. §

2   1395nn(h)(1)(A)-(B).

3        28.    The Stark statute and regulations contain exceptions for certain

4   compensation arrangements, which include "bona fide employment relationships"

5   and "personal services arrangements."  To qualify for these exceptions, the

6   compensation or remuneration, among other things, must not exceed fair market

7   value, and must not be based on or determined in any manner that accounts for the

8   value or volume of referrals.  42 U.S.C. § 1395nn(e)(2)(B) and (C); 42 U.S.C. §

9   1395nn(e)(3)(A)(v).

10       29.    The Stark statute also applies for claims for payment under Medicaid,

11  and federal funds may not be used to pay for designated health services through a

12  state Medicaid program.  42 U.S.C. § 1396b(s).

13

14  **ALLEGATIONS REGARDING DEFENDANTS' WRONGDOING**

15  **Basic Framework of Illegal Scheme**

16       30.    Defendants have been involved in a scheme designed to induce

17  individual physicians to refer admissions, lab work, radiology services, and all

18  ancillary services exclusively to CMC, rather than any number of other hospitals in

19  the geographic region.  A large portion of the services provided at CMC through

20  these referrals include services provided to Medicare and Medicaid patients, and for

21  which CMC has made claims through Medicare and Medicaid.

22       31.    In summary, this is a closed-loop system, pursuant to which excessive

23  compensation is used to induce CMG physicians to refer exclusively to CMC, and

24  the revenues generated by those referrals comprise a significant revenue stream for

25  CHS, which in turns transfers millions of dollars to CMG to sustain the inflated

26  salaries.  To insure continuity in this system, CMG's Chief Medical Officer and

27  Chief Executive Officer are actually paid by CHS.  In turn, CHS's Chief Executive

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    Officer is paid by St. Joseph.  This allows St. Joseph, through CHS, to maintain
2    control over CMG and its physicians.

3        32.    As a foundation of this scheme, St. Joseph, CHS and CMC formed
4    CMG, for the purposes of controlling patient referrals for both inpatient and
5    outpatient services, including those covered by federally-funded healthcare
6    programs as well as the designated health services listed in the Stark statute.
7    Subsequently, these CMG physicians increased the number of patients, including
8    Medicare, Medicaid, and other federally-insured patients they referred to CMC for
9    outpatient and inpatient hospital services.

10        33.    The Defendants, via their wholly owned and controlled subsidiary
11    CMG, employed greater number of physicians and physician specialty practices.
12    Despite being disguised as CMG physicians, these physicians were truly
13    CHS/CMC physicians who are required to refer patients to CMC for inpatient and
14    ancillary services.  To make employment at CMG more attractive to the physicians
15    than maintaining their own private practices, Defendants have provided and
16    continue to provide what they know to be excessive compensation, perks, and
17    benefits to the CMG physicians.

18    **Exorbitant Compensation to CMG Physicians**

19        34.    CMG incentivizes physician referrals to CHS by providing
20    compensation to a number of physicians that far exceeds fair market value of the
21    services provided.  Of the 23 physicians listed on CMG's 2013 IRS Form 990, 15
22    physicians exceeded the 90th percentile of compensation reported in the MGMA
23    Physician Compensation and Production Survey, 2014 Report Based on 2013 Data
24    ("MGMA").  Eighteen physicians exceeded the 90th percentile of compensation
25    reported in the AMGA Medical Group Compensation and Financial Survey, 2014
26    Report Based on 2013 Data ("AMGA").[1]  Similar results were found for 2012.  Of

27

28    [1] The 2014 Surveys were utilized as they contain 2013 data, which are considered the most
     comparable to CMG's 2013 compensation data.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

the 25 physicians listed in CMG's 2012 IRS Form 990, 15 physicians exceeded the 90th percentile of compensation reported in the MGMA Physician Compensation and Production Survey, 2013 Report Based on 2012 Data. Eighteen physicians exceeded the 90th percentile of compensation reported in the AMGA Medical Group Compensation and Financial Survey, 2013 Report Based on 2012 Data.[2]

35.     For example, the highest paid physician reported on the 2013 Form 990, interventional cardiologist Dr. Kurdi, received compensation of $2,028,112 in 2013. By comparison, the median reported by AMGA for interventional cardiology is $544,733 and the median reported by MGMA is $560,000. The 90th percentile for Interventional Cardiology reported by AMGA is $757,294 and the 90th percentile reported by MGMA is $854,651. **This indicates the compensation received by Dr. Kurdi is over $1.2 million higher than the 90th percentile indications reported in the AMGA and MGMA surveys, which is not commercially reasonable.**

36.     As shown in the table below, there were at least 11 CMG physicians (listed by specialty) in 2013 that were paid in excess of $100,000 over the 90th percentile of the AMGA survey (and 9 physicians for the MGMA survey).

| Specialty | Total 2013 Compensation | 90 %ile | | Excess over 90 %ile | |
|---|---|---|---|---|---|
| | | AMGA | MGMA | AMGA | MGMA |
| Interventional Cardiology | $ 2,028,112 | $ 757,294 | $ 854,651 | $ 1,270,818 | $ 1,173,461 |
| Maternal Fetal Medicine | 1,058,555 | 610,044 | 731,394 | 448,511 | 327,161 |
| Interventional Cardiology | 1,187,538 | 757,294 | 854,651 | 430,244 | 332,887 |
| Pediatric Cardiology | 823,908 | 413,580 | 457,514 | 410,328 | 366,394 |
| Pediatric Surgery | 1,078,229 | 727,681 | 791,696 | 350,548 | 286,533 |
| Internal Medicine | 619,577 | 355,058 | 378,143 | 264,519 | 241,434 |
| Hospitalist | 613,326 | 360,116 | 363,099 | 253,210 | 250,227 |
| Hematology/Oncology | 766,187 | 570,081 | 805,271 | 196,106 | (39,084) |
| Family Medicine | 474,549 | 336,162 | 345,540 | 138,387 | 129,009 |
| Orthopedic Surgery | 946,192 | 837,553 | 954,677 | 108,639 | (8,485) |
| Obstetrics/Gynecology | 638,486 | 531,455 | 539,218 | 107,031 | 99,268 |

---

[2] The 2013 Surveys were utilized as they contain 2012 data, which are considered the most comparable to CMG's 2012 compensation data.

1    37.    In addition to those CMG physicians receiving in excess of $100,000

2    over the survey participants set forth above, there are a further six physicians

3    receiving an amount in excess of the 90th percentile of the indications reported in

4    the AMGA survey and MGMA survey:

| Specialty | Total 2013 Compensation | 90 %ile | | Excess over 90 %ile | |
|---|---|---|---|---|---|
| | | AMGA | MGMA | AMGA | MGMA |
| General Surgery | $ 683,588 | $ 590,053 | $ 610,505 | $ 93,535 | $ 73,083 |
| Internal Medicine | 435,009 | 355,058 | 378,143 | 79,951 | 56,866 |
| Family Medicine | 401,114 | 336,162 | 345,540 | 64,952 | 55,574 |
| CV Surgery | 1,018,400 | 976,016 | 947,362 | 42,384 | 71,038 |
| Pediatrics | 379,117 | 358,831 | 379,023 | 20,286 | 94 |
| General Cardiology | 660,067 | 645,156 | 636,982 | 14,911 | 23,085 |
| Interventional Cardiology | 770,154 | 757,294 | 854,651 | 12,860 | (84,497) |

12    38.    Similar results were found for 2012.  As shown in the table below,

13    there were at least 11 CMG physicians (listed by specialty) in 2012 that were paid

14    in excess of $100,000 over the 90th percentile of the 2013 AMGA survey (and 9

15    physicians for the MGMA survey).

| Specialty | Total 2012 Compensation | 90 %ile | | Excess over 90 %ile | |
|---|---|---|---|---|---|
| | | AMGA | MGMA | AMGA | MGMA |
| Interventional Cardiology | $ 1,894,648 | $ 756,710 | $ 833,769 | $ 1,137,938 | $ 1,060,879 |
| Pediatric Cardiology | 870,092 | 405,208 | 495,530 | 464,884 | 374,562 |
| Interventional Cardiology | 1,141,484 | 756,710 | 833,769 | 384,774 | 307,715 |
| Pediatric Surgery | 1,081,586 | 750,519 | 828,577 | 331,067 | 253,009 |
| Hospitalist | 614,430 | 348,406 | 333,281 | 266,024 | 281,149 |
| Internal Medicine | 584,650 | 344,191 | 364,485 | 240,459 | 220,165 |
| Orthopedic Surgery | 1,077,038 | 844,019 | 975,673 | 233,019 | 101,365 |
| General Surgery | 793,632 | 571,391 | 606,703 | 222,241 | 186,929 |
| Orthopedic Surgery | 1,028,525 | 844,019 | 975,673 | 184,506 | 52,852 |
| Maternal Fetal Medicine | 796,504 | 642,263 | 785,527 | 154,241 | 10,977 |
| Obstetrics/Gynecology | 646,864 | 506,160 | 515,866 | 140,704 | 130,998 |

25    39.    In addition to those CMG physicians receiving in excess of $100,000

26    over the survey participants set forth above in 2012, there are a further four

27    physicians receiving an amount in excess of the 90th percentile of the indications

28    reported in both the AMGA survey and MGMA survey:

- 14 -                                    COMPLAINT

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

| Specialty | Total Compensation | 90 %ile | | Excess over 90 %ile | |
|---|---|---|---|---|---|
| | | AMGA | MGMA | AMGA | MGMA |
| Family Medicine | $ 424,013 | $ 326,977 | $ 337,869 | $ 97,036 | $ 86,144 |
| Family Medicine | 414,868 | 326,977 | 337,869 | 87,891 | 76,999 |
| Internal Medicine | 423,307 | 344,191 | 364,485 | 79,116 | 58,822 |
| Hematology/Oncology | 655,622 | 586,101 | 809,197 | 69,521 | (153,575) |
| Pediatrics | 363,791 | 346,380 | 359,467 | 17,411 | 4,324 |
| Emergency Medicine | 427,323 | 416,543 | 447,073 | 10,780 | (19,750) |
| Emergency Medicine | 423,486 | 416,543 | 447,073 | 6,943 | (23,587) |

40.   As additional inducement for steering cardiac-related referrals to CMC (including Medicare and Medicaid patients), the CMG cardiologists are provided with a range of other services, which they would otherwise have to pay for, including transcription services, IT services, and insurance.  The CMG physicians' steady stream of referrals to CMC is induced by these additional perks.

**In exchange for the exorbitant compensation, referrals**

41.   In exchange for the exorbitant salaries CMG pays them, the CMG physicians refer to CMC for admissions, lab work, and other ancillary services.  For example, CMG pays exorbitant salaries to its cardiologists, as more specifically described above.  In exchange, these cardiologists refer all cardiac-related lab work, diagnostic work, and admissions (including but not limited to pacemaker placement, angioplasty, stents, and coronary artery bypass grafting).  The services provided at CMC as a result of these referrals from CMG physicians include costly procedures reimbursed by insurers (including Medicare and Medicaid) at desirable rates, and thus provide a key source of revenue for CHS and St. Joseph.

42.   An analysis of top 10 designated health service ("DHS") related CPT codes[3] performed in the hospital setting by the highest compensated CMG physician (an interventional cardiologist) indicates three of the CPT codes (93306, 93970 and 75630) had volumes in excess of the 90th percentile of all cardiology

---

[3] CPT Codes 93306, 78452, 93880, 93970, 93971, 93925, 75630, 75710, 93320 and 93325.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

specialty physicians in the United States performing those procedures in the facility setting, as reported in the CMS Medicare Provider Utilization and Payment Data for 2013[4]. A further three (93880, 93971 and 75710) had volumes in excess of the 75th percentile of all cardiology specialty physicians in the facility setting.

43.    At all times relevant to this action, Defendants have all realized and intended that the referrals Defendants have gained as a result of such arrangements with the CMG physicians would include referrals of Medicaid, Medicare and other federally-insured patients.

**The Scheme Forces CMG To Lose Millions Every Year**

44.    Defendants' scheme to control referral revenue through overcompensating CMG physicians is apparent from the following pattern of economic trade-offs: Defendants endure persistent losses in operating CMG, but realize substantial gains from hospital admissions and ancillary service referrals from the CMG physicians.

45.    Consistently, year after year, Defendants lose large sums of money on their subsidiary CMG. As demonstrated by the chart below, CMG's excessive salaries have resulted in substantial losses each year for CMG, including from years 2009 through 2013.

| Tax year | Revenue Less Expenses |
|----------|----------------------|
| 2009 | $-22,318,239 |
| 2010 | $-20,621,653 |
| 2011 | $-25,204,356 |
| 2012 | $-23,996,881 |
| 2013 | $-23,241,248 |

46.    For example, in 2013, CMG reported a loss of $23,241,248 on net revenues of $111,952,418 on its IRS Form 990 (Return of Organization Exempt From Income Tax). It also reported a loss of $23,996,881 on net revenues of

---

[4] Medicare Provider Utilization and Payment Data, 2013 Detail.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   $105,219,320 in 2012. In contrast, CHS reported net income of $62,070,236 on net
2   revenues of $570,446,474 in 2013 on its 2013 IRS Form 990. CHS also reported
3   net income of $35,748,437 on net revenues of $552,925,902 in 2012.

4       47.   Such losses exist because the revenue generated by the CMG
5   physicians' practices is insufficient to sustain both (a) the substantially above
6   market salaries, bonuses, and other extravagant perks and benefits Defendants
7   provide the CMG physicians and (b) the other, normal operating expenses required
8   to run the practice.

9       48.   Defendants are thus compensating the CMG physicians whose
10  practices they have purchased at levels that not only exceed what Defendants can
11  rationally afford while maintaining physician practices that could be economically
12  viable on their own merits, but that even more dramatically exceed what Defendant
13  CMG physicians could reasonably expect to earn if they had continued to own and
14  operate the business themselves.

15      49.   Accordingly, as a stand-alone venture, CMG is not economically
16  viable. In most significant part, this is so because the total package of
17  compensation and benefits Defendants pay the CMG physicians is not rationally
18  related to the income produced by those physicians.

19      50.   The only conclusion which explains why Defendants would
20  excessively compensate CMG physicians while tolerating the substantial losses is
21  because Defendants value the referrals obtained from these same physicians and
22  know that they can more than make up for those losses through marginal gains in
23  income that Defendants realize by using such arrangements to maximize the
24  referrals to CMC from these CMG physicians for inpatient and ancillary services.

25      51.   CHS regularly contributes millions to CMG. For at least the past 6
26  years specifically, CHS has contributed between $20,000,000 and $25,000,000 a
27  year to CMG. Moreover, as stated above, CMG's Chief Medical Officer is actually
28  paid by CHS, allowing CHS to maintain control over CMG.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 17 -                                    COMPLAINT

**The Scheme Violates Federal and State Law**

52.  Defendants' compensation scheme is not commercially reasonable because CMG incurs substantial financial losses as direct result of the compensation paid to the physicians.  At the same time, CHS generates a net income that is partially attributable to referrals made to CMC by CMG physicians.  As such, all CMG physician referrals to CMC for services are the product of an illegal kickback scheme in violation of the AKS.  Kickbacks are *malem in se*.  Compliance with the AKS is also a material condition for participation in federal health insurance programs.

53.  Defendants' payments to the CMG physicians also constitute improper financial relationships under the Stark statute that are not subject to any safe harbor.

54.  Defendants knowingly submitted (and continue to submit) to Medicare, Medicaid and other federal health care programs claims for reimbursement and interim payment on the annual hospital cost reports, which cover at least the past 10 years, for the medical services provided as a result of these referrals.  The entire time, Defendants have known that the claims were not properly payable and should not have been submitted under the applicable laws and regulations.

55.  On each annual hospital cost report Defendants have filed over the past 10 years, the Defendants have falsely certified that the medical services identified therein were provided in compliance with all applicable laws and regulations.

56.  Defendants expressly certified their understanding that AKS compliance is of material importance when they enrolled to participate in Medicare.  See CMS Provider/Supplier Enrollment Application, Forms 855-A and 855-B.

57.  Submitting a claim under false pretense of entitlement is a false claim under the FCA.  Defendants violated the FCA by knowingly presenting claims for payment to federal health insurance programs that are materially false on account of Defendants' AKS violations.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 18 -                                           COMPLAINT

58.    In addition, notwithstanding their clear obligation under federal law and the terms of federal insurance programs, Defendants have billed and continue to bill the Government for self-interested referrals from its extensive network of approximately 250 physicians.

59.    Finally, St. Joseph and CHS are operated under common management and control.  St. Joseph's Corporate Responsibility Handbook provides in relevant part:

> As a nonprofit organization, SJHS and its nonprofit ministries have a legal and ethical obligation to comply with applicable laws, to engage in activities to further its charitable purpose, and to ensure that its resources are used to further our charitable mission rather than the private or personal interest of any private individual. The requirements for organizations exempt under Section 501(c)(3) of the Internal Revenue Code and similar provisions of state law  must be followed.

> . . .

> Transactions must be in the best interest of SJHS and negotiated at "arm's length" for fair market value. SJHS employees must avoid compensation arrangements in excess of fair market value. Employees unsure of how to proceed with sensitive situations should consult with management for guidance.

60.    Despite the express knowledge of its impropriety and admonishment against overcompensation, Defendants have engaged in such activities.

61.    This action seeks damages, civil penalties, and disgorgement arising from the fraudulent claims paid pursuant to this scheme.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 19 -                                    COMPLAINT

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## COUNT 1

### FEDERAL FALSE CLAIMS ACT VIOLATIONS

### 31 USC § 3729(a)(1)(A) & (B)2

### Presenting or Causing Presentment of a False Claim

### as a Result of Violations of the AKS

62.     Relator realleges and incorporates by reference the allegations in the foregoing paragraphs.

63.     To the extent wrongdoing occurred prior to May 20, 2009, this Complaint also alleges violations of the Federal False Claims Act prior to its recent amendments e.g., 31 U.S.C. §3729(a)(1).

64.     At all times relevant to this action, Defendants were legally obligated to only seek reimbursement for services provided to federally insured patients if Defendants complied with applicable federal law.

65.     At all times relevant to this action, Defendants were also legally obligated to take corrective action upon discovering that they received payment for services not provided or provided in derogation of Defendants' obligations under federal law.

66.     Instead, Defendants violated federal law and the terms and conditions of participation in federal health insurance programs by:

a.     Entering into physician employment agreements that compensate physicians in a commercially unreasonable manner and/or in excess of fair market value in violation of the employment exception to the referral prohibition imposed by the Stark Law, 42 U.S.C. § 1395nn;

b.     Compensating employee physicians based on the volume or value of services referred to the hospital in violation of the Stark Law;

c.     Accepting self-interested referrals prohibited by 42 U.S.C. §1395nn(a)(1)(A);

d.     Paying remuneration to employee physicians in exchange for referrals

1   in violation of the AKS, 42 U.S.C. § 1320a-7b; and

2           e.      In other such ways as discovered during the litigation of this action.

3           67.     Defendants knowingly presented, or caused to be presented, false and

4   fraudulent claims for payment or approval to the United States, including those

5   claims for reimbursement for services provided in violation of the Anti-Kickback

6   Statute, which prohibits any form of remuneration to induce referrals.

7           68.     Defendants presented these claims with actual knowledge of the

8   information, or acted in deliberate ignorance of the truth or falsity of the

9   information, or acted in reckless disregard of the truth or falsity of the information.

10  31 U.S.C. § 3729(b)(1).

11          69.     Defendants knowingly, willfully and falsely certified their compliance

12  with federal law when they submitted claims for payment that violated the Stark

13  Law and the AKS in the manner described above.

14          70.     These violations are material to Defendants' participation as a provider

15  in federal health insurance programs such that Defendants' fraudulent certification

16  of compliance with federal law renders these claims false for the purpose of the

17  FCA.

18          71.     Defendants knowingly and willfully presented these claims to obtain

19  payment from federal health insurance programs including Medicare,

20  TRICARE/CHAMPUS, and Medicaid.

21          72.     Defendants knew that the Medicare, TRICARE/CHAMPUS, and

22  Medicaid programs relied on, and continues to rely on, Defendants' false

23  certification that their claims complied with federal law.

24          73.     Defendants' fraudulent claims have been and continue to be paid by

25  federal health insurance programs at great cost to United States taxpayers.

26          74.     Defendants' conduct is a violation of 31 U.S.C. § 3729(a)(1)(A) & (B),

27  as amended.

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    75.    As a result of the false or fraudulent claims Defendants made, the
2  United States has suffered damages and therefore is entitled to recovery as provided
3  by the FCA in an amount to be determined at trial, plus a civil penalty for each
4  violation.

5

6                                    **COUNT 2**
7                          **FEDERAL FALSE CLAIMS ACT**
8  **Presenting Claims to Medicare and Medicaid for Designated Health Services**
9              **Rendered as a Result of Violations of the Stark Statute**
10    76.    Plaintiff realleges and incorporates by reference the allegations in the
11  foregoing paragraphs.

12    77.    Defendants knowingly presented, or caused to be presented, false and
13  fraudulent claims for payment or approval for designated health services rendered
14  to patients who were referred by physicians who had a prohibited financial
15  relationship, indirectly, through CMG and CHS.

16    78.    These claims were presented with actual knowledge of their falsity, or
17  with reckless disregard or deliberate ignorance of whether they were false.

18    79.    By virtue of the false or fraudulent claims made by Defendants, the
19  United States has suffered damages and therefore is entitled to recovery as provided
20  by the FCA of an amount to be determined at trial, plus a civil penalty for each
21  violation.

22

23                                   **COUNT 3**
24          **FEDERAL FALSE CLAIMS ACT, 31 USC 3729(a)(1)(B)**
25                        **Use of False Statements**
26    80.    Relator realleges and incorporates by reference the allegations in the
27  foregoing paragraphs.

28

COMPLAINT

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

81.     Defendants made, used and caused to be made or used, false records or statements material to a false or fraudulent claim—i.e., the false certifications and representations made and caused to be made by Defendants when initially submitting the false claims for interim payments and the false certifications Defendants made when submitting the cost reports.

82.     Defendants made the false records or statements with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

83.     As a result of Defendants' false records or statements material to a false or fraudulent claim, the United States has suffered damages and therefore is entitled to recovery as provided by the FCA in an amount to be determined at trial, plus a civil penalty for each violation.

## COUNT 4

### FEDERAL FALSE CLAIMS ACT, 31 USC 3729(a)(1)(C)

### Conspiracy to commit a violation

84.     Relator realleges and incorporates by reference the allegations in the foregoing paragraphs.

85.     Defendants entered into a conspiracy or conspiracies among themselves and others, to violate 31 U.S.C. § 3729(a)(1)(A) or 31 U.S.C. § 3729(a)(1)(B), and committed one or more overt acts in furtherance of said conspiracy or conspiracies, in violation of 31 USC § 3729(a)(1)(C).

86.     As a result of Defendants' acts, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act in an amount to be determined at trial, plus a civil penalty for each violation.

COMPLAINT

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## COUNT 5

### CALIFORNIA UNFAIR COMPETITION ACT VIOLATIONS
### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

87.     Relator realleges and incorporates by reference the allegations in the foregoing paragraphs.

88.     Defendants' conduct set forth herein has had a substantial effect on commerce, and constitutes unlawful, unfair, and fraudulent business practices in violation of §§ 17200, *et seq.*, of the California Business and Professions Code.

89.     Defendants willfully intended to benefit from the illegal referrals to CMC and to compensate referring physicians at CMG well above the fair market value of their services in violation of, *inter alia*, Texas Human Resources Code § 32.039(b), which prohibits any form of remuneration to induce referrals, and in violation of the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code § 36.002(1), (2), & (13).

90.     Defendants' illegal activities were unfair harmful to the public because they induced physicians to refer patients to extra or more expensive services, and the referrals were based on considerations other than the best interests of the patient, including the Defendants' profit motive.

91.     As a direct and proximate result of Defendants' unlawful acts, Relator has suffered and will continue to suffer injury to his business and goodwill.

92.     Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts described herein, Relator will continue to suffer irreparable harm.   Relator is thus entitled, pursuant to California Business and Professions Code §§ 17203 and 17535, to an injunction restraining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts of unfair competition, as well as to restitution and disgorgement of Defendants' profits.

1
2
3

## COUNT 6

## TEXAS MEDICAID FRAUD PREVENTION ACT VIOLATIONS

## Tex. Hum. Res. Code § 36.002(1), (2), (9), & (13)

4      93.    Relator realleges and incorporates by reference the allegations in the

5  foregoing paragraphs.

6      94.    At all times relevant to this action, Defendants were legally obligated

7  to only seek reimbursement for services provided to Medicaid patients if

8  Defendants complied with applicable federal and Texas law.

9      95.    Instead, Defendants violated federal and Texas law and the terms and

10  conditions of participation in Medicaid programs by paying remuneration to

11  employee physicians in exchange for referrals in violation of, *inter alia*, Texas

12  Human Resources Code § 32.039(b).

13      96.    Defendants knowingly presented, or caused to be presented, false and

14  fraudulent claims for payment or approval to the state of Texas, including those

15  claims for reimbursement for services provided in violation of, *inter alia*, Texas

16  Human Resources Code § 32.039(b), which prohibits any form of remuneration to

17  induce referrals, and in violation of the Texas Medicaid Fraud Prevention Act, Tex.

18  Hum. Res. Code § 36.002(1), (2), & (13).

19      97.    Defendants presented these claims with actual knowledge of the

20  information, or acted in deliberate ignorance of the truth or falsity of the

21  information, or acted in reckless disregard of the truth or falsity of the information.

22      98.    Defendants entered into a conspiracy or conspiracies among

23  themselves and others, to violate applicable Texas law, and committed one or more

24  overt acts in furtherance of said conspiracy or conspiracies, in violation of the Tex.

25  Hum. Res. Code § 36.002(9).

26      99.    As a result of the false or fraudulent claims Defendants made, the state

27  of Texas has suffered damages and therefore is entitled to recovery as provided by

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  the Texas Medicaid Fraud Prevention Act in an amount to be determined at trial,

2  plus a civil penalty for each violation.

**PRAYER**

5  **WHEREFORE,** Relator Howard Beck, M.D. prays for judgment against

6  Defendants as follows:

1. That Defendants cease and desist from violating 31 U.S.C. § 3729 et seq.;

2. That this Court enter judgment against Defendants in an amount equal to
   three times the amount of damages the United States has sustained because of
   Defendants' actions, plus a civil penalty of not less than $5,500 and not more
   than $11,000 for each violation of 31 U.S.C. § 3729;

3. That this Court enter judgment against Defendants in an amount equal to
   three times the amount of damages the state of Texas has sustained because
   of Defendants' actions, plus a civil penalty of not less than $5,500 and not
   more than $11,000 for each violation of the Texas Medicaid Fraud
   Prevention Act;

4. That Plaintiff/Relator be awarded the maximum amount allowed pursuant to
   § 3730(d) of the False Claims Act;

5. That Plaintiff/Relator be awarded the maximum amount allowed pursuant to
   Texas Human Resources Code § 36.110(a) and/or any other applicable
   provision of law;

6. That the Court grant preliminary and permanent injunctions enjoining
   Defendants, their officers, agents and employees, and all persons acting in
   concert with them, from engaging in any further such acts of unfair
   competition, as alleged herein;

7. That Defendants be required to account for and pay Plaintiff/Relator the
   maximum amount allowed pursuant to § 17200 of the California Business
   and Professions Code;

COMPLAINT

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

8. That Plaintiff/Relator be awarded all costs of this action, including attorneys' fees and expenses;

9. That the United States, the state of Texas, and Plaintiff/Relator be granted pre-judgment and post-judgment interest on the damages caused by Defendants; and

10. That the United States, the state of Texas and Plaintiff/Relator recover such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Relator demands a trial by jury on all issue so triable.

Dated:   September _30_, 2016          TROUTMAN SANDERS LLP


By: _____
    Jennifer Trusso Salinas
    Jenny Kim
    Attorneys for Relator
    HOWARD BECK, M.D.


Dated:   September _30_, 2016          WEST, WEBB, ALLBRITTON & GENTRY


By: _____
    Gaines West
    Amy C. Klam
    Attorneys for Relator
    HOWARD BECK, M.D.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 27 -                                                    COMPLAINT

CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| UNITED STATES OF AMERICA. ex. rel. HOWARD BECK, M.D. | ST. JOSEPH HEALTH SYSTEM, COVENANT HEALTH SYSTEM, COVENANT MEDICAL CENTER, COVENANT MEDICAL GROUP |

| (b) County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. | Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. |
|---|---|
| TROUTMAN SANDERS, LLP 5 PARK PLAZA, SUITE 1400 IRVINE, CALIFORNIA 92614 TELEPHONE: 949-622-2700 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☒ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multidistrict Litigation - Transfer

☐ 8. Multidistrict Litigation - Direct File

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
31 U.S.C. SECTION 3729 ET SEQ.; 42 U.S.C. SECTION 1395 ET SEQ.; 42 U.S.C. SECTION 1396 ET SEQ.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☒ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 400 State Reapportionment | ☐ 130 Miller Act | ☐ 290 All Other Real Property | **TORTS** | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 410 Antitrust | ☐ 140 Negotiable Instrument | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 430 Banks and Banking | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 450 Commerce/ICC Rates/Etc. | | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 460 Deportation | ☐ 151 Medicare Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 480 Consumer Credit | | ☐ 340 Marine | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 891 Agricultural Acts | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | ☐ 690 Other | |
| ☐ 893 Environmental Matters | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | **LABOR** | |
| ☐ 895 Freedom of Info. Act | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 448 Education | ☐ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: SACV16-01824 CAS (GJSx) |
|---|---|
| CV-71 (07/16) | CIVIL COVER SHEET | Page 1 of 3 |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court?<br>☐ Yes  ☒ No<br><br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | STATE CASE WAS PENDING IN THE COUNTY OF: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | | Western |
| | ☐ Orange | | Southern |
| | ☐ Riverside or San Bernardino | | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?<br><br>☒ Yes  ☐ No<br><br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | B.1. Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☒ YES. Your case will initially be assigned to the Southern Division.<br>Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| | | ☐ NO. Continue to Question B.2. |
| | B.2. Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division.<br>Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will be assigned to the Western Division.<br>Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action?<br><br>☐ Yes  ☒ No<br><br>If "no," skip to Question D. If "yes," answer Question C.1, at right. | C.1. Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division.<br>Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| | | ☐ NO. Continue to Question C.2. |
| | C.2. Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division.<br>Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division.<br>Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☒ | ☐ | ☐ |

| D.1. Is there at least one answer in Column A?<br><br>☒ Yes  ☐ No<br><br>If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br><br>Enter "Southern" in response to Question E, below, and continue from there.<br><br>If "no," go to question D2 to the right. ➡ | D.2. Is there at least one answer in Column B?<br><br>☐ Yes  ☒ No<br><br>If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br><br>Enter "Eastern" in response to Question E, below.<br><br>If "no," your case will be assigned to the WESTERN DIVISION.<br><br>Enter "Western" in response to Question E, below. ⬇ |
|---|---|

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | SOUTHERN |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes | ☒ No |

CIVIL COVER SHEET

**IX(a). IDENTICAL CASES**: Has this action been previously filed in this court?  [x] NO  [ ] YES

If yes, list case number(s):

**IX(b). RELATED CASES**: Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?

[x] NO  [ ] YES

If yes, list case number(s):

**Civil cases** are related when they (check all that apply):

[ ] A. Arise from the same or a closely related transaction, happening, or event;

[ ] B. Call for determination of the same or a substantially related or similar questions of law and fact; or

[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

[ ] A. Arise from the same or a closely related transaction, happening, or event;

[ ] B. Call for determination of the same or a substantially related or similar questions of law and fact; or

[ ] C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**                       DATE:  9/30/16

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |